IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

ALMAN INDUSTRIES, LLC.,

    **Plaintiff and**

v.                                                              CIVIL ACTION NO. 4:20-cv-188

SUPREME METAL SOLUTIONS, INC.,

C.E.I. COMPOSITE MATERIALS, LLC,

    and

NATIONWIDE MUTUAL
INSURANCE COMPANY,

    **Defendants**

*MEMORANDUM OPINION AND ORDER*

Before the Court is Defendants' Supreme Metal Solutions, Inc. ("SMS"), CEI Composite Materials, LLC ("CEI"), and Nationwide Mutual Insurance Company ("Nationwide") (collectively "Defendants") Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint, under Federal Rule of Civil Procedure 12(b)(6). ECF No. 12. The Court finds that a hearing is not necessary. Having reviewed the parties' filings, this matter is ripe for judicial determination.

**I.**     **FACTUAL AND PROCEDURAL HISTORY**

The following facts taken from Alman Industries, LLC's ("Alman" or "Plaintiff") Complaint are considered true and cast in the light most favorable to Plaintiff. ECF No. 1; *see also, Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

The instant case stems from a construction project for the United States of America at the NASA Measurement Systems Laboratory located at Langley Research Center in Hampton, Virginia (the "Project"). ECF No. 1 at ¶ 1. On December 1, 2016, W.M. Jordan Company ("W.M.

1

Jordan") was awarded the contract for the Project as the general contractor for the Project (the "Prime Contract"). *Id.* at ¶ 9. Defendant CEI Composite Materials, LLC ("CEI") was awarded a subcontract to complete work under the Prime Contract (the "W.M. Jordan/CEI Contract"). *Id.* at ¶ 10. As part of the requirements under the Prime Contract, CEI, as bond principal, furnished a payment bond in the penal amount of Four Million, Eight- Hundred and Seven Thousand, Seven-Hundred Ninety-Four Dollars ($4,807,794.00) (the "CEI Payment Bond"). *Id.* at ¶ 11. The surety of the CEI Payment Bond is Nationwide Mutual Insurance Company ("Nationwide") and both, CEI and Nationwide, are jointly and severally bound themselves to pay all persons or entities supplying labor, materials, and equipment for the Project. *Id.* at ¶¶ 12-13; *see id.* at Exhibit 1.

CEI retained SMS as a subcontractor to perform certain work on the Project as part of the Prime Contract. *Id.* at ¶ 14. Pursuant to a Subcontract Agreement – Installation (the "Subcontract"), SMS hired Plaintiff Alman to supply certain labor, materials and equipment for the Project, including the installation of aluminum composite wall panels, profile louvers, and Berridge M panels on the Project (the "Work"). *Id.* at ¶ 15; *see id.* at Exhibit 2. The total sum of the Subcontract was One Million, Six-Hundred Thirty-Six Thousand, Eight-Hundred Thirty-Two Dollars ($1,636,832.00). *Id.* at ¶ 18. During the course of the Work, SMS requested that Alman perform additional work through the issuance of various Change Orders. *Id.* at ¶ 19. On December 12, 2019, Alman completed all its work requirements or provided all materials. *Id.* at ¶ 22.

However, SMS, CEI and Nationwide have failed and/or refused to pay Alman for the balance due and owing for the Project. *Id.* at ¶ 23. Accordingly, pursuant to the Payment Bond, on February 7, 2020, Alman provided CEI with notice of its claim by U.S. Certified Mail and then, on February 11, 2020 served CEI by private process. *Id.* at ¶ 24; *see id.* at Exhibit 3. Similarly, on February 17, 2020, Alman provided Nationwide with notice of its claim. *Id.* at ¶ 25. In all, Alman

alleges that it remains unpaid for work performed and labor, materials, and equipment provided to the Project in the amount of no less than One Million, Nine-Hundred Forty-Five Thousand, Eight-Hundred Eighty-Nine Dollars, and 44/100 ($1,945,889.44). *Id.* at ¶ 26.

On December 11, 2020, Plaintiff filed a four-count complaint against Defendants. Count I alleges Breach of Contract against SMS. *Id.* at ¶¶ 29-33. Count II alleges Payment Bond Claim against Nationwide and CEI. *Id.* at ¶¶ 34-41. Count III alleges Unjust Enrichment in the alternative to Counts I & II. *Id.* at ¶¶ 42-53. Count IV alleges Quantum Meruit in the alternative to Counts, I, II, and III. *Id.* at ¶¶ 54-65.

On March 26, 2021, Defendants filed the instant Motion to Dismiss Counts II, III and IV of Plaintiff's Complaint. ECF No. 12. On April 9, 2021, Plaintiff responded in opposition. ECF No. 25. On April 15, 2021, Defendants replied. ECF No. 26.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of actions that fail to state a claim upon which relief can be granted. The United States Supreme Court has stated that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Specifically, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Moreover, at the motion to dismiss stage, the court is bound to accept all of the factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Assessing the claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common

sense." *Id.* at 679.)). In considering a Rule 12(b)(6) motion to dismiss, the Court cannot consider "matters outside the pleadings" without converting the motion to a summary judgment. Fed. R. Civ. P. 12(d). Nonetheless, the Court may still "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *see also* Fed. R. Civ. P. 10(c).

### III. DISCUSSION

#### A. Jurisdiction and Choice-of-Law

As an initial matter, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff Alman is a limited liability company organized and existing under the laws of South Carolina, with its principal place of business in Roebuck, South Carolina. ECF No. 1 at ¶ 1. Defendant SMS is a corporation organized and existing under the laws of Michigan, with its principal place of business in Bridgewater, Michigan. *Id.* at ¶ 2. Defendant CEI is a limited liability company organized and existing under the laws of Michigan, with its principal place of business in Manchester, Michigan. *Id.* at ¶ 3. Defendant Nationwide is a corporation organized and existing under the laws of Ohio, with its principal place of business in Columbus, Ohio. *Id.* at ¶ 4. Moreover, the amount in controversy exceeds $75,000. *Id.* at ¶¶ 5, 18, 40. In a diversity action, district courts apply federal procedural law and state substantive law. *See Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Federal courts sitting in diversity jurisdiction apply the choice of law rules in the state in which it sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (noting that forum state's choice of law rules is substantive).

In Virginia, if a contract includes a choice of law provision, that provision governs. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 (1990); *see also, Hitachi Credit*

4

*Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 25 S.E.2d 321, 324 (Va. 1943)) ("Virginia law looks favorably upon choice-of-law clauses in a contract, giving them full effect except in unusual circumstances"). If the contract does not include a choice of law provision, the place where the contract is made governs. *Seabulk Offshore, Ltd. v. Am. Home Assur. Co.*, 377 F.3d 408, 419 (4th Cir. 2004) (noting that "[q]uestions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made"). A contract is made when the last act to complete the contract is performed. *Id.*

Here, the contract between Alman and SMS contains a valid choice of law provision which states that "This Agreement shall be governed by the laws of the United States and the State of Virginia, including the choice-of-law rules of Virginia, and SMS and Subcontractor hereby consent to the jurisdiction...." ECF No. 1 at Exhibit 2 at ¶ 26. Moreover, the construction project, which is the subject of this Complaint, is in Hampton, Virginia. ECF No. 1 at ¶ 6. Therefore, the Court will apply Virginia law in reviewing the alleges counts in the Complaint.

### B. Motion to Dismiss Counts II, III, and IV

1. Count II: Payment Bond Claim

Count II alleges a Payment Bond Claim against Defendants Nationwide and CEI. *Id.* at ¶¶ 34-41. In their motion to dismiss, Defendants' allege that Plaintiff is not entitled to the Payment Bond because Alman did not satisfy the conditions of the surety by failing to submit a proper and timely claim. ECF No. 13 at 6-9.

Pursuant to the original Paragraphs 4.1, 4.2, and 4.3 of the Payment Bond, for Claimants who do not have a direct contract with the Contractor (i.e. Defendant CEI):

> The Surety shall have no obligation to Claimants under this Payment Bond until
>
> 4.1: [Claimant has] furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and
>
> 4.2: Have either received a rejection in whole or in part from the Contractor, or not received *within 30 days* of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and
>
> 4.3: Not having been paid *within the above 30 days*, have sent a written notice to the Surety...and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

*See* ECF No. 1 at Exhibit 1 (emphasis added); *see also, Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (holding that the Court may "consider documents attached to the complaint . . . as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic"). Notably, Paragraph 4.3 was modified to require that Plaintiff may recover under the Payment Bond if "Claimant has furnished to Surety *proof of claim duly sworn to by Claimant*, along with adequate supporting documentation with proves the amount claimed is due and payable." *Id.* (emphasis added). In short, to receive relief under the Payment Bond the Claimant (Plaintiff Alman) must have satisfied the following three requirements: (1) provide the Contractor (CEI) and Surety (Nationwide) with notice of its claim within 90-days of when labor was last performed; (2) Claimant must either receive an express rejection from the Contractor, or no response within 30-days of its notice; and (3) Claimant must submit sworn proof of the claim with supporting documentation.

After the Surety (Nationwide) receives the proof of claim, pursuant to unmodified Paragraph 6.1 of the Payment Bond, the Surety shall "send an answer to the Claimant, with a copy

to the Owner, within 45 days after receipt of the claim, and the basis for challenging any amounts that are disputed." *See* ECF No. 1 at Exhibit 1. However, Paragraph 6 was modified as follows:

> When the Claimant has satisfied the conditions of Paragraph 4, and has submitted all supporting documentation and any proof of claim requested by the Surety, the Surety shall, *within a reasonable period of time,* notify the Claimant of the amounts that are undisputed and the basis for challenging any amounts that are disputed, including, but not limited to, the lack of substantiating documentation to support the claim as to entitlement or amount, and the Surety shall, *within a reasonable period of time,* pay or make arrangements for payment of any undisputed amount; provided, however, that the failure of the Surety to timely discharge its obligations under this paragraph or to dispute or identify any specific defense to all or any part of the claim shall not be deemed to be an admission of liability... Rather, the Claimant shall have the immediate right, without further notice, to bring suit against the Surety to enforce any remedy available to it under this Bond.

*Id.* (emphasis added). Critically, the modification allows Nationwide to respond to a claim under the Payment bond within "a reasonable period of time" as opposed to within 45-days.

As noted above, according to the Complaint, CEI furnished a payment bond in the amount of $4,807,794.00 (the "CEI Payment Bond"). ECF No. 1 at ¶ 11. The surety of the CEI Payment Bond is Nationwide, and, thus, both, CEI and Nationwide are jointly and severally liable to pay all persons or entities supplying labor, materials, and equipment for the Project. *Id.* at ¶¶ 12-13; *see id.* at Exhibit 1. CEI (the Contractor) retained Defendant SMS as a subcontractor to perform certain work on the Project as part of the Prime Contract. *Id.* at ¶ 14. Pursuant to a Subcontract Agreement, Defendant SMS hired Plaintiff Alman to supply certain labor, materials and equipment for the Project. *Id.* at ¶ 15; *see id.* at Exhibit 2. The total sum of the Subcontract was $1,636,832.00. *Id.* at ¶ 18. Then, SMS requested Alman perform additional work through the issuance of various

7

Change Orders. *Id.* at ¶ 19. On December 12, 2019, Alman completed all its work requirements and provided all materials. *Id.* at ¶ 22.[1]

Alman then alleges that, "[d]espite Alman's proper performance of its Work on the Project, SMS, CEI and Nationwide have failed and/or refused to pay Alman for the balance due and owing for the Project." *Id.* at ¶ 23. Accordingly, pursuant to the requirements of the Payment Bond and before the 90-day requirement, on February 7, 2020, Alman provided CEI with notice of its claim for $1,321,009.72 by U.S. Certified Mail and then, on February 11, 2020 served CEI by private process. *Id.* at ¶ 24; *see id.* at Exhibit 3. Then, on February 17, 2020, Alman provided Nationwide with notice of its claim. *Id.* at ¶ 25; *see id.* at Exhibit 4. Accordingly, Alman satisfied the requirement of Paragraph 4.1 in the Payment Bond. Then, CEI failed to respond to the notice of the claim, and did not pay Alman, within 30-days as required by Paragraphs 4.2 of the Payment Bond. As the Complaint alleges, despite repeated demands, SMS failed and refused to pay Alman $1,945,889.44, "which represents the balance due and owing for the labor and/or materials furnished by Alman in the prosecution of the Project." *Id.* at ¶ 38.

Critically, however, it is disputed whether Alman satisfied the requirement of Paragraph 4.3 (modified). That is, Defendants' allege that Alman did not submit a duly sworn claim with supporting documentation. ECF No. 13 at Exhibit 1. In response, Plaintiff points to its Complaint where it alleged that it "complied with all conditions precedent to its entitlement to enforce its payment bond action." ECF No. 1 at ¶ 41. Although this factual contention is one that the Court must resolve in later proceedings to afford Plaintiff relief, the Court need not resolve it now because it is sufficient for Plaintiff to generally allege, at this stage, that it complied with all

---

[1] The Court takes judicial notices that 90 days after December 12, 2019 would be March 11, 2020. *See* Fed. R. Evid. 201 (the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.")

8

conditions precedent of the Payment Bond (i.e. Paragraph 4.3). *See United States ex rel. Aarow/IET LLC v. Hartford Fire Ins. Co.*, 838 F. App'x 736, 744 (4th Cir. 2020) (holding that "[t]hose allegations are sufficient to demonstrate [Plaintiff's] compliance with [the Agreement]").

Pursuant to Modified Paragraph 6.1 of the Payment Bond, after receiving notice of the claim, Nationwide had "a reasonable period of time" to send an answer to Alman and the basis for challenging any amounts that are disputed. *See* ECF No. 1 at Exhibit 1 at ¶ 6.1. Notably, the Payment Bond does not define what is "a reasonable period of time." Therefore, without a clear definition the Court must interpret the plain meaning of the temporal language. To do so, the Court may rely on the Payment Bond itself. As noted above, the previous unmodified version of the Payment Bond provided that the Surety would have 45-days from when it received notice of the claim to respond. Based on the dates provided in the Complaint, Nationwide would have had until April 2, 2020, or 45-days from February 17, 2020, to respond based on the unmodified Paragraph 6.1. *See* ECF No. 1 at Exhibit 1. However, Nationwide issued its response on May 28, 2020 and asked Alman to provide additional documentation supporting its claim. *See* ECF No. 13 at Exhibit 1 at 19. That is, Nationwide issued its response 101-days after Alman's notice of claim, sent on February 17, 2020. Although, Nationwide is not strictly held to the 45-day timeframe, the Court notes that Nationwide waited more than double the amount of time that the Payment Bond previously required in the unmodified Paragraph 6, i.e. 45-days.

The question of whether 101-days[2] is a "reasonable period of time" is one that the Court does not need to answer now because, for purposes of the instant motion, the Court need only determine whether it is plausible that Plaintiff followed the requirements of the Payment Bond and, thus, stated a claim upon which relief may be afforded. Although Defendants allege that

---

[2] The Court takes judicial notices that May 28, 2020 is 101-days after February 17, 2020. *See* Fed. R. Evid. 201.

9

Nationwide did not have a reasonable time to respond to Alman's claim, the Court finds that it is reasonable to conclude otherwise. Although Defendant argues that Alman waited until December 11, 2020 to submit an Affidavit of Claim, this evidence does not dissuade the Court's finding that, based on the Complaint, it is plausible and reasonable to infer that Alman complied with notice requirements of the Payment Bond and that Nationwide did not. *See* ECF No. 13 at Exhibit 1.

In all, the Court finds that Alman has satisfied the pleading requirements to state a claim. First, as noted above, Alman pleaded sufficient facts to allow the Court to reasonably infer that Alman complied with the notice requirements of Paragraphs 4.1, 4.2, and 4.3 (modified) of Payment Bond. Second, Alman pleaded sufficient facts to support the reasonable inference that Nationwide did not comply with the requirement of modified Paragraph 6.1 of responding to Plaintiff's notice of claim within a "reasonable period of time." Accordingly, based on the alleged facts of the Complaint, it is plausible that Alman had the "immediate right, without further notice, to bring suit against the Surety to enforce any remedy available to it under this Bond." *See* ECF No. 1 at Exhibit 1 at ¶ 6.1. Thus, Alman appropriately filed the instant suit on December 11, 2020, which was within one-year of from the day on which the last of the labor was performed or material was supplied by Alman. *Id.* at ¶ 39.

In the alternative, Defendants' request that the amount in controversy with respect to Alman's claim against the Payment Bond should be reduced to $614,989.72. ECF No. 13. In further alternative, Defendants' request that the amount in controversy with respect to Count II should be reduced to $1,321,009.72. *Id.* Based on the Complaint, Alman requests $1,945,889.44 plus interest, attorneys' fees, and costs in damages for Counts I and II, where Count I is not being moved for dismal. ECF No. 1 at ¶ 40. Accordingly, at this stage, the Court will not reduce the amount of damages claimed by Alman because they have been properly plead with particularity.

Therefore, Defendants' motion to dismiss Count II is **DENIED**.

2. Count III: Unjust Enrichment & Count IV: Quantum Meruit

Count III alleges Unjust Enrichment in the alternative to Counts I & II. *Id.* at ¶¶ 42-53. Similarly, Count IV alleges Quantum Meruit in the alternative to Counts, I, II, and III. *Id.* at ¶¶ 54-65

*Quantum meruit* and unjust enrichment are equitable claims that provide relief where one party has been unjustly enriched by the labor of another. *Elite Plastic Surgery, LLC v. Seekford*, 2016 U.S. Dist. LEXIS 178066, *7 (*citing Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 490-91 (4th Cir.1992). Specifically, an unjust enrichment claim is available when a "(1) '[plaintiff] conferred a benefit on [defendant]; (2) [defendant] knew of the benefit and should reasonably have expected to repay [plaintiff]; and (3) [defendant] accepted or retained the benefit without paying for its value.'" *T. Musgrove Constr. Co., Inc. v. Young*, 840 S.E.2d 337, at 340-41 (Va. 2020) (quoting *Schmidt v. Household Fin. Corp., II*, 276 Va. 108 (2008)); *see also, Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 157 (4th Cir. 2020). Unjust enrichment does not require a promise to pay under Virginia law. *See Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 166 (4th Cir. 2012) ("Failure to allege an implicit promise to pay, however, is not necessarily fatal to an implied contract theory."). As a quasi-contract, the measure of recovery for unjust enrichment is "limited to the benefit realized and retained by the defendant." *Id.*

Alternatively, if a defendant did not request plaintiff's services, a plaintiff's claim should be examined under unjust enrichment. *T. Musgrove Constr. Co.* at 341. In Virginia, unjust enrichment and *quantum meruit* claims arise only where there is no express contract. *See Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp.*, 961 F.2d 489, 491 (4th Cir.1992) ("One cannot obtain quantum meruit relief from another if he has expressly delineated the contractual obligations the two will have on the subject in question"). Specifically a *quantum meruit* claim

exists when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect. *T. Musgrove Constr. Co.* at 486 (citing *Marine Dev. Corp. v. Rodak*, 225 Va. 137, at 140-41 (1983)). Although a claim for *quantum meruit* requires a request for services, unjust enrichment does not. *See T. Musgrove Constr. Co.* at 341 ("When the defendant has not requested the plaintiff's services, a plaintiff's claim is for unjust enrichment.").

In its Complaint, with respect to Count III, Alman alleges that it "provided labor, materials and equipment which improved the Project and increased the Project's value and/or the amount that SMS could recover from CEI and that CEI could recover from W.M. Jordan (the "Improvements")." ECF No. 1 at ¶ 43. Further, Alman alleges that "the parties' subcontract is of no effect as to the Improvements or the Improvements are not covered by any express contract because the Improvements were outside the scope of any contract, there was no agreement on the price for the Improvements, the compensation discussed was too indefinite, and/or there was a misunderstanding as to the price to be paid." *Id.* ¶ 45. Moreover, Alman alleges that CEI and SMS accepted, retained, and benefited from these improvements with the expectation that Alman would have been compensated. *Id.* at ¶¶ 46-49.

With respect to Count IV, Alman alleges that it provided labor, materials and equipment which improved the Project (the "Improvements") at the request of CEI and SMS which were in addition to the Contract for the Project. ECF No. 1 at ¶¶ 55-56. Specifically, Alman alleges that the "[t]he Improvements are not covered by any written contract between the parties, as they were outside the scope of any written contract, there was no agreement on the price for the Improvements, the compensation discussed was too indefinite, and/or there was a

misunderstanding as to the price to be paid." *Id.* at ¶ 57. Moreover, Alman alleges that CEI and SMS knew that Alman provided the Improvements with a reasonable expectation that CEI and SMS would pay for them and that CEI and SMS accepted and benefited from the Improvements. *Id.* at ¶¶ 58-61.

Accordingly, the Court finds that since the alleged Improvements occurred outside of the Contract for the Project, Alman has plead sufficient facts to state unjust enrichment and *quantum meruit* claims for the extra work it performed, in the alternative to Counts I and II. Critically, at a minimum, Alman alleges that it provided labor that benefited Defendants and that there is a misunderstanding about the amount Defendants owe Plaintiff for that extra labor it performed at the request of CEI and SMS. *See Fessler v. Int'l Bus. Machines Corp.*, 959 F.3d 146, 159 (4th Cir. 2020) (holding that Plaintiff's claim for quantum meruit because "of the lack of the meeting of the minds with regard to exact payment [plaintiff] would receive for his work."), *see id.* at 159 ("...at a minimum, there is a misunderstanding as to the price to be paid and that the value of his work was a lot more than the compensation he received."). Since Alman alleges enough facts to suggest that it performed work at the request of CEI and SMS and did not receive sufficient compensation for its labor and services, Alman adequately states a claim for *quantum meruit* and unjust enrichment.

Furthermore, although Plaintiffs alternative claims could be inconsistent with Count I for Breach of Contract, Plaintiff is not barred from seeking relief on alternative theories. *See e.g., Shah & Assocs., Inc. v. Hazen & Sawyer, P.C.*, No. 112CV772GBLTRJ, 2012 WL 13029491, at *3 (E.D. Va. Oct. 17, 2012) (holding similarly in a case where plaintiff alleged that it performed extra work not explicitly negotiated in the contract and while plaintiff "may not prevail on inconsistent theories, it is not prohibited from alleging alternative theories that support different or

contradictory claims for relief when the existence of a contract concerning the same subject matter on which the quasi-contract claim rests is in dispute.").

Therefore, Defendants' motion to dismiss Counts III and IV is **DENIED**.

## IV. CONCLUSION

Based on the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 12, Counts II, III, and IV is **DENIED**.

The Court **DIRECTS** the Clerk to provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

Newport News, Virginia
July 7, 2021

/s/ Raymond A. Jackson
UNITED STATES DISTRICT JUDGE